## Case No. 7,605.

### KAMPSHALL v. GOODMAN et al.

[6 McLean, 189.] [1]

Circuit Court, D. Michigan. Oct. Term, 1854.

STATUTE OF LIMITATIONS—REVIVAL OF ACTIONS.

1. There are two modes by which an action may be revived, after the statute has barred it.

2. A clear and an unconditional acknowledgment of the debt, from which the law implies a promise to pay.

3. If the acknowledgment be conditional, the liability attaches, under the conditions.

4. But if the acknowledgment be connected with any condition which shows there was no intention to pay the debt, it does not take the case out of the statute. The action must be on the new promise, the indebtment is considered a sufficient consideration to support the promise.

5. But the remedy is on the new promise. If the acknowledgment of the debt, be coupled with a proposition to pay it, partly in money and partly in property, the payment can only be enforced as the terms propose. The original debt is not revived, and it is considered only as affording a good consideration on the new promise.

At law.

Lathrop & Porter, for plaintiff.
Terry & Howard, for defendants.

[1] [Reported by Hon. John McLean, Circuit Justice.]

OPINION OF THE COURT. This action is brought on four promissory notes, dated 16th May, 1835, payable at different times; one for five hundred dollars, and the other three for one thousand dollars each; signed by Lowell Goodman, E. S. Goodman, and A. A. Goodman. Lowell Goodman, the father of the other two, being dead, and also E. S. Goodman, process was served on A. A. Goodman, the defendant. The defendant pleaded the statute of limitations, to which the plaintiff replied that, the defendant promised within six years, &c. The case turns on the new promise. All the notes were admitted in evidence,' from which it appears the statute has run against them, so as to bar a recovery, unless under the plea, a new promise be shown. The action in assumpsit must be brought, under the act of limitations, within six years after the right of action accrues; but the 13th section provides, that "in actions founded upon contract, express' or implied, no acknowledgment or promise shall be evidence of a continuing contract, whereby to take a case out of the provisions of this chapter, or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing, signed by the party to be charged thereby." Angell on Limitations accurately and succinctly states the rule to be in this country and in England, as ascertained from decided cases: 1. That a debt barred by the "statute of limitations, may be revived by a new promise. 2. That such new promise may either be an express promise, or an implied one. 3. That the latter is created by a clear and unqualified acknowledgment of the debt. 4. That if the acknowledgment be accompanied by such qualifying expressions or circumstances, as repel the idea of an intention or contract to pay, no implied promise is created."

The letter on which the new promise is founded, reads as follows: "Mount Clement, May 30th, 1847. Dear Sir: I take the liberty of writing you at this time, more especially for the purpose of obtaining a receipt for the $300 I sent you in October, 1845, in a draft on Buffalo, or one of the notes, should there be one of that amount. The receipt I wish to be given to me as administrator of L. Goodman's estate, which I hope you will forward me soon. It is necessary for me to have a receipt for the $300. My only brother was drowned in Detroit last fall. Afflictions have been multiplied upon me in various ways for the last few years, and that old demand of yours on my father's estate, is a subject of no little anxiety. I think (I) could raise some cash to pay you on a month's notice, provided you would take the Willoughby house and lot in Ohio to settle up the whole demand. The house and lot were appraised at $1,333, and $300 I have paid, and I can get from our Cleveland debt $500, which is all we shall probably get; and I can borrow $500 more in cash, provided I can settle the whole demand and give a mortgage on what is left us of the rest of the property, for the $500 we loan. That will make $2,633. The small lot in Ohio was set off for mother, and the house and lot are free from any encumbrance. I should be obliged to have some time to raise the cash, and get an order to sell, from the court in Ohio, to make the conveyance legal. I can see no other way for me to raise sufficient to settle with you and the other creditors, but for them to take property; and should you think best to do this, please forward the notes to some one here, and I shall settle it as soon as the sale can be made; or should you not prefer my offer for the estate as above, you will please take the property for your equal share among the creditors, according to the laws of this state. Signed A. A. Goodman." In this letter, there is a clear and an unequivocal acknowledgment of the indebtment, claimed by the plaintiff. The writer speaks first of a payment of $300, which he had made and for which he requested a receipt, or the surrender of one of the notes. He then states that the "old demand of the plaintiff," against the estate of his father was a subject of no little anxiety, and he proposes a mode of payment, of property and money, amounting to the sum of $2,633, which was about the balance due on the four notes. As he was jointly and severally bound with his father in all the notes, an acknowledgment of the indebtment would operate against him. But this acknowledgment was coupled with a special mode of payment, in property and money, favorable to the defendant and the estate he represented. And the question arises here, whether this mode of payment must be considered as a condition annexed to the acknowledgment of the debt.

If the acknowledgment can be considered separate and distinct from the mode of payment proposed, there can be no doubt of the plaintiff's right to a judgment. The rule established by the court is, that an unqualified admission of the indebtment authorises an implied promise to pay, on which an action may be sustained. The original debt is referred to as the foundation of the promise, but the action rests exclusively on the acknowledgment and the implied promise, and not upon the original contract. That is barred by the statute, and cannot be asserted as a ground of recovery. It is not the renewal of the former ground of action, but a new action founded upon the acknowledgment of the original debt and the implied promise. This, it must be admitted, is a technical device of the courts, under the statute, which does not seem necessarily to belong to the subject. The statute of limitations is founded upon public policy, to protect individuals against stale claims. It is founded at least in part, upon the presumption that where a debt, without an acknowledgment, or payment of interest, is permitted to run beyond the statute, it has been

·paid. Now it would seem, that a distinct and an unequivocal acknowledgment of the indebtment. after the statute had run, should remove the bar and give legal force to the demand. But the current of decisions in our courts is that the acknowledgment does not revive the original cause of action, but is the foundation of a promise on which an action may be sustained. In the case of Bell v. Morrison, 1 Pet. [26 U. S.] 355, this subject was considered at great length, and the court say: "There is some confusion in the language of the books. resulting from a want of strict attention to the distinctions here indicated. It is often said that an acknowledgment revives the promise, when it is meant, that it revives the debt or cause of action. The revival of a debt supposes that it has been once extinct and gone; that there has been a period in which it had lost its legal use and vitality. The act which revives it, is what essentially constitutes its new being. and is inseparable from it. It stands not by its original force, but by the new promise, which imparts validity to it. Proof of the latter is indispensable to raise the assumpsit on which the action can be maintained. It was this view of the matter which first created the doubt, whether it was not necessary that a new consideration should be proved to support the promise, since the old consideration was gone. The doubt has been overcome; and it is now held, that the original consideration is sufficient, if recognized, to uphold the new promise, although the statute cuts it off, as a support for the old. What indeed would seem to be decisive on this subject, is, that if the new promise is qualified or conditional, it restrains the rights of the party to its own terms; and if he cannot recover by those terms, he cannot recover at all." Here a principle is laid down, and it is this: The action must be brought and sustained on the new promise, with no other reference to the old promise, which is barred, than as the consideration of the new one. If the acknowledgment of the indebtment be clear and unequivocal, and without condition, the law implies a promise to pay; but if terms of payment are connected with the acknowledgment of the debt, the new remedy is on the terms proposed. Almost numberless citations of decisions might be made, on this question, but they would rather confuse than make clearer the above statement. It embodies the principle upon which the modern decisions under the statute rest.

It only remains to apply the above principle to the case before us. In his letter the defendant says, "I think (I) could raise some cash to pay on a month's notice, provided you would take the Willoughby house and lot in Ohio, to settle up the whole demand. The house and lot were appraised at $1333, and $300 I have paid you, and I can get from our Cleveland debt $500, and I can borrow $500 more in cash. That will make $2633," (which sum is about the balance due on the notes.) And if Kempshall the plaintiff, declines this proposition, he proposes to give to him an equal share of the property among the creditors. Here are two modes of payment proposed. First to pay $2633, about the balance due on the notes, in property and money, some time being given; and if this should be declined, that Kempshall should take his proportionate share of the property with the other creditors. This is the new obligation assumed on the consideration of the old indebtment; and under the above rule, the remedy must be on the new obligation. Whether it has been so acted on by the plaintiff, as to make it obligatory, is not now a subject of inquiry. It is true that the defendant was a joint and several promissor with his father, since deceased, and the propositions of payment seemed to refer to the property of the deceased, on which he had administered; but the terms of the new promise must be taken as they were made, seeing the old· promise was barred by the statute. It appears to me that it would better have promoted the ends of justice, to consider the admission of the subsisting indebtment, as removing the obstruction of the statute, instead of affording ground for a new action. But the decisions of the courts have been otherwise, and we are bound by them and especially, by the decision in the case of Bell v. Morrison [supra]. From this view of the case, the verdict which has been found by the jury, must be set aside, and a non-suit entered.